FENTON et al., Appellants,

v.

QUERY et al., Appellees.

[Cite as *Fenton v. Query* (1992), 78 Ohio App.3d 731.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900899.

Decided March 18, 1992.

732

*William H. Blessing,* for appellants.
*Mark R. Fitch,* for appellees.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the briefs and the arguments of counsel. We have *sua sponte* removed this appeal from the accelerated calendar.

Plaintiffs-appellants John H. Fenton and Janice H. Fenton have taken the instant appeal from the judgment of dismissal entered after circumstances rendered moot their action seeking injunctive, declaratory and monetary relief for alleged violations of John Fenton's statutory and constitutional rights in connection with his ouster from Norwood High School. The appellants advance on appeal a single assignment of error, in which they contend that the trial court abused its discretion in denying their application for attorney fees under Section 1988, Title 42, U.S.Code.

In August 1987, as plaintiff-appellant John Fenton was poised to enter his senior year at Norwood High School, his parents moved from the Norwood City School District to a school district in the city of Cincinnati. To enable John to complete his senior year at Norwood High School, John's mother, plaintiff-appellant Janice Fenton, leased an apartment in the Norwood City School District to serve as John's principal residence for purposes of attending school and attending to his part-time employment at a fast-food restaurant in the city of Norwood. John resided in the apartment alone until October 1987, when a Norwood school official contacted John's father to advise him that the district's residency requirement mandated that at least one parent live in the apartment with John. The Fentons decided that Janice Fenton would live in the apartment with John from Sunday night through Friday morning of each week for the duration of the school year. Defendant-appellee David A. Query, the Superintendent of Norwood schools, subsequently learned of the Fentons' arrangement and contacted John's father by telephone to express his displeasure with the arrangement and to question, not its legality, but its "fairness." Finally, by letter dated December 16, 1987, Query advised the Fentons that, "[a]s of Friday, December 18, 1987, your son, John, will not be permitted to attend school at Norwood High School" because "I do not accept the living arrangements you have made for John as residency in the city of Norwood."

The Fentons responded to Query's letter by filing on December 17 in Hamilton County Common Pleas Court a complaint and a motion for a temporary restraining order. The Fentons alleged in their complaint that John's "expulsion" from Norwood High School constituted a deprivation, under color of state law, of the due-process rights secured under the Fourteenth Amendment to the United States Constitution, in violation of Section

1983, Title 42, U.S.Code,[1] and a violation of the rights conferred under R.C. 3313.64.[2] The Fentons thus sought a preliminary and permanent injunction prohibiting the defendants from interfering with John's attendance at Norwood High School or his selection as valedictorian of his class, a declaration that the defendants' conduct constituted a violation of John's federal due-process rights and state statutory right to attend Norwood High School, monetary relief, and an award of attorney fees and costs pursuant to Section 1988, Title 42, U.S.Code.

On December 17, the trial court conducted a proceeding which, by agreement of the parties, was converted from a hearing on the Fentons' motion for a temporary restraining order to a hearing on their prayer for a preliminary injunction. Upon the evidence adduced at the hearing, the trial court issued a preliminary injunction prohibiting the defendants "from preventing Plaintiff John H. Fenton from attending Norwood High School until all requirements of Ohio Rev.Code § 3313.66 have been satisfied." Except for filing an answer to the Fentons' complaint on December 24, 1987, the defendants took no further action to remove John from Norwood High School, and John graduated as valedictorian of Norwood High School's Class of 1988.

In June 1988, the Fentons filed an application for an award of attorney fees pursuant to Section 1988, Title 42, U.S.Code. On August 30, 1988, the trial court filed findings of fact and conclusions of law and an entry denying the application. On March 9, 1989, the court filed amended findings of fact and conclusions of law in support of its denial of the Fentons' application for fees. The court therein concluded that John's removal from Norwood High School for failure to meet the statutory residence requirement was "tantamount" to an "expulsion" for purposes of the notice and hearing requirements of R.C. 3313.66 and constituted "a denial of natural due process" when the removal was accomplished without notice and a hearing while John was already enrolled in and attending the school. The court's denial of the Fentons' application for fees was predicated, however, upon its determination that the

---

1. Section 1983, Title 42, U.S.Code provides in pertinent part:
    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  * * * "

2. R.C. 3313.64, entitled "Free schooling for residents," provides in relevant part:
    "(B) A child who is at least five but under twenty-two years of age shall be admitted to school as provided in this division * * *.
    "(1) A child shall be admitted to the schools of the school district in which his parent resides."

defendants acted to oust John from Norwood High School upon a "good faith belief that [the Fentons] were not in compliance with the statutory residency requirements set forth in R.C. 3313.64(B)(1)" and that "[t]emporarily ordering the defendant[s] to refrain from removing [John Fenton] from * * * school until certain due process rights were provided * * * [or] until the requirements of due process such as those set forth in O.R.C. 3313.66 or those required by natural due process have been met is not a finding that [his] constitutional rights have been violated so as to make [him] a prevailing party under 42 U.S.C. § 1988."

In May 1990, the Fentons filed a motion requesting the entry of final judgment in the action upon a representation of their willingness to dismiss voluntarily their pending claim for monetary relief. On November 28, 1990, the trial court placed of record its "Entry of Final Judgment of Dismissal," and, on December 12, 1990, the Fentons filed their notice of appeal.

## I

We reject at the outset the defendants' contention that the Fentons' appeal was not filed within the thirty-day time period prescribed in App.R. 4(A). An appeal may be taken only from a final order, judgment or decree. R.C. 2505.03. R.C. 2505.02 defines a "final order" to include "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment [or] an order affecting a substantial right made in a special proceeding * * *."

The March 9, 1989 entry denying the Fentons' application for attorney fees was not, in its effect, determinative of their claim for monetary relief and did not prevent a judgment on that claim. Nor did that entry constitute "an order affecting a substantial right made in a special proceeding." Therefore, the entry was not, as the defendants maintain, a final order from which an appeal might be taken.

However, the November 28, 1990 "Entry of Final Judgment of Dismissal," entered upon the Fentons' representation that they would abandon their remaining claim for monetary relief, was a "final order" for purposes of the appellate jurisdiction conferred under R.C. 2505.03. Therefore, the Fentons' appeal, filed on December 12, 1990, was perfected within the time strictures of App.R. 4(A).

## II

Turning to the merits of the challenge advanced on appeal, we note that the Civil Rights Attorney's Fee Awards Act of 1976, Section 1988, Title 42, U.S.Code, as amended, provides in relevant part:

" * * * In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

"The purpose of the Act is to ensure effective access to the judicial process to persons with civil-rights grievances." *Hensley v. Eckerhart* (1983), 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40.

■ The language of the Act is permissive, and, therefore, an award of Section 1988 attorney fees is committed to the sound discretion of the trial court. *Hensley, supra; Gibney v. Toledo Bd. of Edn.* (1988), 40 Ohio St.3d 152, 532 N.E.2d 1300. However, as the District Court for the Northern District of Ohio noted in *Webb v. Aggrey* (N.D.Ohio 1979), 481 F.Supp. 651:

"That a court has discretion to do or not to do an act does not mean that it has a license to decide as it pleases. The exercise of discretion is a judicial act, controlled by more or less well defined legal standards." *Id.* at 652 (citing B. Cardozo, The Nature of the Judicial Process [1921] 129).

■ Federal courts have developed a "well defined" standard for determining the entitlement of a civil-rights plaintiff to Section 1988 attorney fees. *Webb,* 481 F.Supp. at 652. In the absence of a strong showing of special circumstances that would render such an award unjust, fees must be awarded if (1) the plaintiff may be said to be a "prevailing party," and (2) the claim upon which the plaintiff has prevailed either (a) was based on a federal right created under a statute specified in Section 1988 or (b) was based on state law, but was joined in an action and arose out of "a common nucleus of operative fact" with such a federal claim that, although unaddressed, satisfied a test of substantiality. See, *e.g., Hensley, supra; Morscott, Inc. v. Cleveland* (C.A.6, 1991), 936 F.2d 271; *Dahlem v. Bd. of Edn. of Denver Pub. Schools* (C.A.10, 1990), 901 F.2d 1508; *Seals v. Quarterly Cty. Court* (C.A.6, 1977), 562 F.2d 390.

■ The United States Supreme Court has held Section 1988 to be applicable by a state court in its exercise of concurrent jurisdiction over a federal claim based on a statute specified therein, which has been joined in an action with a claim based exclusively on state law. See, *e.g., Maine v. Thiboutot* (1980), 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555. Section 1988 permits a state court to look to state law to fill the gaps in federal law, but only to the extent that state law is not "inconsistent" with the policies of federal law. The standard developed by federal courts for determining an entitlement to Section 1988 fees promotes the legislative intent in favor of fee awards that is

manifest in the language and legislative history of Section 1988. *Webb, supra.* We, therefore, hold that the federal standard controls our review of the trial court's exercise of discretion on the Fentons' application for Section 1988 fees. Contra *Willson v. Bd. of Trustees of Ohio State Univ.* (Dec. 24, 1991), Franklin App. No. 91AP–144, unreported, 1991 WL 274862; *Gibney v. Toledo Bd. of Edn.* (1991), 73 Ohio App.3d 99, 596 N.E.2d 591 (a trial court's disposition of an application for Section 1988 fees does not constitute an abuse of discretion unless it evinces an unreasonable, arbitrary or unconscionable attitude on the part of the court); compare *Gibney, supra,* 40 Ohio St.3d at 158, 532 N.E.2d at 1306 (citing *Hensley, supra,* without elaboration, for the proposition that the determination of the amount of a Section 1988 fee award is discretionary).

## A

The "touchstone" of "prevailing party" status is a resolution of the dispute that works a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers v. Garland Indep. School Dist.* (1989), 489 U.S. 782, 792–793, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866, 878. To cross the "statutory threshold" of prevailing-party status, *Hensley, supra,* 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50, a party must show either (1) that he achieved "some bottom-line litigatory success" on the merits of a significant issue in the litigation which afforded him some of the relief sought or (2) that, despite the absence of a favorable decision, the litigation had " 'a catalytic effect' * * * in bringing about a beneficial change in [the] defendants' conduct or in the conditions complained of—a change which would not have occurred but for the institution of the suit." *Langton v. Johnston* (C.A.1, 1991), 928 F.2d 1206 (quoting *Guglietti v. Secretary of HHS* [C.A.1, 1990], 900 F.2d 397). Thus, a litigant may recover Section 1988 attorney fees as a "prevailing party" even if the litigation was terminated by consent decree, settlement, voluntary cessation of an unlawful practice, or other mooting of the case, without a formal or final adjudication in his favor. *Maher v. Gagne* (1980), 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653; *Taylor v. Ft. Lauderdale* (C.A.11, 1987), 810 F.2d 1551; *Callicotte v. Cheney* (D.D.C.1990), 744 F.Supp. 3. He need only have "succeeded on 'any significant issue in litigation which achieve[d] some of the benefit * * * sought in bringing suit.' " *Garland, supra,* 489 U.S. at 789, 109 S.Ct. at 1493, 103 L.Ed.2d at 875; *Hensley, supra,* 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50 (quoting *Nadeau v. Helgemoe* [C.A.1, 1978], 581 F.2d 275, 278–279); see, also, *Gibney, supra,* 40 Ohio St.3d at 158, 532 N.E.2d at 1306 (citing *Hensley, supra* ).

■ In applying what has been termed the "merits test," *Langton, supra,* 928 F.2d at 1224, "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Garland, supra,* 489 U.S. at 789, 109 S.Ct. at 1492, 103 L.Ed.2d at 876 (citing *Hensley, supra* ). The success must be more than de minimus and more than of a purely technical nature, but it need not be on the "central issue" or be the primary relief sought, and the grant of relief may be *pendente lite* or at the conclusion of the litigation. *Garland, supra,* 489 U.S. at 789–791, 109 S.Ct. at 1492–1493, 103 L.Ed.2d at 875–876.

■ In an action in which a preliminary injunction has issued, but which has become moot, through no acquiescence by the defendant, before the entry of final judgment, a civil-rights plaintiff may qualify for prevailing-party status under the merits test if the injunction constitutes a decision on the merits.[3] See *Associated Builders & Contr. of Louisiana, Inc. v. Orleans Parish School Bd.* (C.A.5, 1990), 919 F.2d 374, 377–378, and cases cited therein. A preliminary injunction is a decision on the merits for purposes of determining prevailing-party status if it "represent[s] an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo * * *." *Dahlem, supra,* 901 F.2d at 1511 (quoting *Webster v. Sowders* [C.A.6, 1988], 846 F.2d 1032, 1036).

■ The preliminary injunction issued below prohibited the defendants from interfering with John Fenton's attendance at Norwood High School until the requirements of R.C. 3313.66 were met. The trial court issued the preliminary injunction after a full hearing and upon its determination that John's removal was "tantamount" to an "expulsion" for purposes of the notice and hearing requirements of R.C. 3313.66 and constituted "a denial of natural

---

**3.** The Tenth Circuit in *Dahlem, supra,* found what has come to be known as the "catalyst test," *Langton, supra,* 928 F.2d at 1224, to be inapplicable to a determination of the prevailing-party status of a plaintiff who obtained a preliminary injunction in an action mooted before appeal, because the test applies only to a party who has not achieved a decision on the merits. The court also noted that "[t]he purpose of the [catalyst] test is to ensure, in cases where a concession of defeat might be inferred from defendant's conduct, that the conduct was actually brought about by the lawsuit * * * and not when the defendant acted supererogatorily." The court thus found the catalyst test to be more appropriate to cases mooted by the defendant's "voluntary" compliance under the threat of a lawsuit, which shows acquiescence in the plaintiff's position, as opposed to a situation, more suitable to the merits test, in which the case is mooted during the defendant's "involuntary" compliance with a seemingly valid court order under fear of contempt, which does not evince acquiescence in the plaintiff's position. *Dahlem,* 901 F.2d at 1511–1512, fn. 3; compare *Orleans Parish, supra* (the catalyst test is applicable when the entry of judgment is preempted by dismissal of the action as moot after defendants repealed the challenged set-aside program).

due process." We conclude that the injunction constituted a decision on the merits when the findings of fact and conclusions of law issued upon the denial of the Fentons' application for Section 1988 fees indicate that preliminary injunctive relief was granted not merely to preserve the status quo, but to secure to John Fenton those procedural protections to which the court found him entitled. Compare *Libby by Libby v. Illinois High School Assn.* (C.A.7, 1990), 921 F.2d 96 (plaintiff was not a prevailing party when the court's remarks in granting a temporary restraining order showed it was merely maintaining the status quo).

The Fentons, by their action, sought to secure to John Fenton the due-process protections of notice and an opportunity to be heard and to provide to him the opportunity to complete his senior year at Norwood High School and to position himself to graduate as valedictorian of his class. The injunction and the defendants' compliance with the injunction until the case was mooted by John's graduation enabled the Fentons to realize all but the monetary goals of the litigation. We, therefore, conclude that the Fentons were, for purposes of establishing an entitlement to Section 1988 attorney fees, prevailing parties.

## B

■ A prevailing party on a claim based exclusively on state law may be awarded Section 1988 attorney fees if (1) the state claim was joined in an action with a claim based on a federal right created under a statute specified in Section 1988, (2) "the state claim arose out of 'a common nucleus of operative fact with the federal claim,'" and (3) the federal claim, although unaddressed, "otherwise met the substantiality test of *Hagans v. Lavine* (1974), 415 U.S. 528, 94 S.Ct. 1372 [39 L.Ed.2d 577] * * * and *United Mine Workers v. Gibbs* (1966), 383 U.S. 715, 86 S.Ct. 1130 [16 L.Ed.2d 218]." *Doe v. Cuddy* (1985), 21 Ohio App.3d 270, 273, 21 OBR 341, 343, 487 N.E.2d 914, 917 (quoting *Seals, supra*).

The Fentons sought in their complaint injunctive, declaratory and monetary relief on claims predicated on a state right arising under R.C. 3313.64 and a federal right arising under Section 1983, Title 42, U.S.Code. The entry granting the Fentons' prayer for preliminary injunctive relief makes no express reference to the Fentons' federal claim, but simply enjoins the defendants "from preventing * * * John H. Fenton from attending Norwood High School until all requirements of Ohio Rev.Code § 3313.66 have been satisfied." The state-law basis for the court's grant of injunctive relief is echoed in the findings of fact and conclusions of law issued upon the denial of the Fentons' application for attorney fees. Thus, the Fentons were prevailing

parties on a state claim that was joined in an action with and arose out of a common nucleus of operative fact with a claim based on a federal right created under a statute specified in Section 1988.

A question remains, however, as to whether the Fentons' federal claim, although unaddressed in the entry granting injunctive relief, was addressed in the findings of fact and conclusions of law issued upon denial of the application for attorney fees and was therein found by the court to be insubstantial. A determination by the court that the Fentons' federal claim was insubstantial is implicit in the court's citation to *Geraci v. St. Xavier High School* (Dec. 27, 1978), Hamilton App. No. C–780581, unreported, in support of its finding that John Fenton was denied "natural due process" and in the court's conclusion that "[t]emporarily ordering the defendant to refrain from removing [John Fenton] from * * * school until certain due process rights were provided * * * [or] until the requirements of due process such as those set forth in O.R.C. 3313.66 or those required by natural due process have been met is not a finding that [his] constitutional rights have been violated so as to make [him] a prevailing party under 42 U.S.C. § 1988." We hold, however, that, even if the court's findings of fact and conclusions of law might be so construed, the court's denial of Section 1988 attorney fees on that basis was in error.

Under the test of substantiality set forth in *Hagans, supra,* and *Gibbs, supra,* "[a] claim may be held plainly insubstantial * * * only if it is obviously without merit or if its unsoundness so clearly results from previous judicial decisions that it must be said that the subject is foreclosed and that there is no room for the inference that the question sought to be raised can be a matter of legitimate controversy." *Doe, supra,* 21 Ohio App.3d at 273, 21 OBR at 344, 487 N.E.2d at 917.

In *Geraci, supra,* we held that, although the Due Process Clause of the Fourteenth Amendment is not implicated in the disciplinary proceedings of a private school, a court may exercise its broad equitable powers to intervene when the proceedings "do not comport with fundamental fairness." It is unclear how our decision in *Geraci* might serve as precedent for a determination that John Fenton was denied "natural due process" or just what the court intended to convey by the use of that phrase. It is clear, however, that *Geraci* provides no precedent for evaluating the federal due-process implications of the disciplinary proceedings of a public school.

Equally untenable is the court's attempt in its findings of fact and conclusions of law to draw some meaningful distinction between the R.C. 3313.66 notice and hearing requirements and the Fourteenth Amendment's due-process requirements. The United States Supreme Court in *Goss v. Lopez* (1975),

419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, held that a public school's disciplinary proceedings implicate a student's property and liberty interests, which are protected under the Due Process Clause of the Fourteenth Amendment, and that R.C. 3313.66, as it then provided, was unconstitutional to the extent that the statute permitted the removal of a student without notice of the charges, an explanation of the evidence against him, and an opportunity to be heard. R.C. 3313.66 was amended in 1976 to incorporate the Fourteenth Amendment due-process requirements imposed by *Goss*.

We conclude that the Fentons' federal claim, which the court below did not address for purposes of granting preliminary injunctive relief, met the test of substantiality set forth in *Hagans, supra,* and *Gibbs, supra.* Therefore, the court's denial of the Fentons' application for Section 1988 attorney fees may not be predicated on the insubstantiality of their unaddressed federal claim. See *Doe, supra.*

### C

A trial court's discretion to deny Section 1988 attorney fees to a prevailing party is closely circumscribed and may be exercised only upon a strong showing of special circumstances that would render such an award unjust. *Dahlem, supra,* 901 F.2d at 1514. In the instant case, the trial court denied the Fentons' application for attorney fees in part upon its determination that the defendants acted upon a "good faith belief that [the Fentons] were not in compliance with the statutory residence requirements set forth in R.C. 3313.64(B)(1)." Good-faith conduct on the part of a civil-rights defendant does not, however, constitute a "special circumstance," *Morscott, supra; Webb, supra,* and the record before us is otherwise devoid of evidence that might support a finding of special circumstances that would render an award of fees unjust. See, also, *Riddell v. Natl. Democratic Party* (C.A.5, 1980), 624 F.2d 539 (neither good-faith conduct by defendants in enforcing a statute nor the state's responsibility for payment of any attorney fees awarded constituted a "special circumstance"); compare *Dahlem, supra* ("special circumstances" precluded a fee award to a prevailing plaintiff whose lack of entitlement to the relief secured by a preliminary injunction was promptly revealed by the reversal on appeal of a companion case concerning identical legal issues and overlapping defendants).

In sum, the Fentons were prevailing parties on a state claim that was joined in an action with and arose out of a common nucleus of operative fact with a claim based on a federal right created under a statute specified in Section 1988. Moreover, there was no basis upon which the trial court might have concluded that the unaddressed federal claim was "plainly insubstantial" or

that special circumstances existed that would render an award of attorney fees unjust. We, therefore, hold that the trial court's denial of the Fentons' application for Section 1988 attorney fees constituted an abuse of discretion. Accordingly, we sustain the Fentons' sole assignment of error, reverse the judgment entered below, and remand for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., SHANNON and KLUSMEIER, JJ., concur.