CITY OF CINCINNATI ex rel. KUNTZ et al., Appellants and Cross–Appellees,

v.

CITY OF CINCINNATI et al., Appellees and Cross–Appellants.

[Cite as *Cincinnati ex rel. Kuntz v. Cincinnati* (1992), 79 Ohio App.3d 86.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910242, C–910263.

Decided April 1, 1992.

*Manley, Burke & Fischer,* Andrew S. Lipton and *Anne T. Perry,* for appellants/cross-appellees.

*Fay Danner DuPuis,* City Solicitor, and *James F. McCarthy III,* for appellees/cross-appellants.

HILDEBRANDT, Judge.

On October 27, 1988, David Kuntz filed a complaint in the Hamilton County Court of Common Pleas against the within defendants (collectively the "city") in which he sought a declaratory judgment that he was entitled to participate in the city's retirement system, and that he was entitled to sick pay and vacation credit for the period of June 30, 1968 to June 2, 1973; an injunction prohibiting the city from misapplying funds and abusing its powers by

refusing to permit Kuntz to participate in the above benefits; and reasonable costs and attorney fees pursuant to R.C. 733.61 and Section 1988, Title 42, U.S.Code. An amended complaint which sought the same relief was filed on November 3, 1988. On December 19, 1988, the city filed an answer to the amended complaint. Thereafter, Kuntz and the city each filed motions for summary judgment. On May 18, 1989, the trial court granted Kuntz's motion for summary judgment and denied the city's motion. The trial court held as follows:

"1. The City Civil Service Commission's determination of February 12, 1987, as to the civil service status of plaintiff David Kuntz is binding upon the City of Cincinnati.

"2. Plaintiff David Kuntz is entitled to participate as a matter of law in the retirement system with the city as a classified civil servant.

"3. Plaintiff David Kuntz is entitled to sick leave and vacation credits by virtue of his classified civil service status from June 30, 1968, through June 2, 1973."

The city appealed the trial court's judgment of May 18, 1989, to this court in appeal No. C–890371. That appeal was dismissed on October 3, 1990, because Kuntz's request for attorney fees was still pending in the trial court, thereby denying this court jurisdiction to consider the city's appeal. *Cincinnati ex rel. Kuntz v. Cincinnati* (Oct. 3, 1990), Hamilton App. No. C–890371, unreported, 1990 WL 143455.

On April 1, 1991, the trial court denied Kuntz's application for attorney fees. The court reasoned that Kuntz was not entitled to attorney fees because he had not demonstrated that his action constituted a sufficient public benefit to warrant an award of attorney fees under R.C. 733.61. The trial court further stated that "the court finds that in its previous decision entered on May 18, 1989, the court did not grant summary judgment to plaintiff on his alleged claims brought under 42 U.S.C. Section 1983; therefore, plaintiff is not entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. Section 1988." The trial court incorporated by reference its judgment entry dated May 18, 1989, into the judgment entry dated April 1, 1991.

Kuntz appealed to this court, contesting the trial court's denial of his motion for attorney fees. The city appealed to this court from the trial court's judgment granting Kuntz the right to participate in the city's retirement plan, sick leave and vacation credit.

The record discloses that Kuntz was employed by the city as a classified civil service employee from August 5, 1957, until November 27, 1965. During that period, Kuntz and the city each made contributions to the city's retire-

ment system in order to fund Kuntz's pension. Subsequent to leaving the city's employ, Kuntz withdrew his accumulated contributions to the city's retirement system. On June 30, 1968, the city hired Kuntz as an administrator in the city's health department. He remained in this position until June 2, 1973. This employment was governed by several personal-service contracts which extended Kuntz's employment for periods of approximately one year. On June 3, 1973, Kuntz became employed as a permanent unclassified civil service employee of the city in the position of business manager for the health department.

On January 29, 1987, Kuntz requested a determination of his employment classification status for the period of June 30, 1968 to June 2, 1973, from the Cincinnati Civil Service Commission (the "commission"). The commission issued the following decision on February 12, 1987:

"A legal opinion was obtained from the City Solicitor's Office which stated that under Ohio Civil Service Statutes the category of 'contract employee' does not exist and unless Mr. Kuntz was an independent contractor during the period of 6/30/68 to 6/2/73 he is entitled to civil service status by state law. Since Mr. Kuntz was not an independent contractor during the time period in question and since his job duties did not fall into one of the specific categories of unclassified employees, Mr. Kuntz should be considered as a classified employee for this time. After review and discussion, the Commission approved changing Mr. Kuntz's personnel record to indicate classified status from 6/30/68 to 6/2/73."

The city did not appeal the commission's ruling.

On October 12, 1988, the Council of the city of Cincinnati passed Ordinance 406–1988 for the purpose of:

"Amending section 203–1–E of the Cincinnati Municipal Code to legislatively clarify and affirm that persons who have previously provided personal services to the City of Cincinnati as contract employees are not entitled to retirement service credit for the period of contract service regardless of any employee status under civil service law."

This ordinance provided in pertinent part as follows:

"Subject to the provisions of Section 203–23, 'employee' shall not include:

"1. Any person who is employed by a temporary help service or other independent contractor who performs services under the direction of any agent or employee of the city of Cincinnati;

"2. Any person who is employed on a contractual basis by the city of Cincinnati or any of its independent boards, commissions or any other employing agency that participates in the retirement system; and

"3.   Any person who is employed under a personal service contract by the city of Cincinnati or any of its independent boards, commissions or any other employing agencies that participate in the retirement system.

*"Eligibility for retirement service credit as an 'employee' shall be determined exclusively by the provisions of this chapter regardless of any eligibility for or determination of civil service status.*

"In cases of doubt, the [retirement] board shall decide who is an employee within the meaning of the ordinance sections governing the retirement systems and may permit any person who was an employee at the time of becoming a member to continue as an employee as long as the person continues as a member in receipt of a regular salary from the city for service. *Any such determination by the board shall be final and conclusive.* [Emphasis ours.]"

Appeal Number C–910263

In a single assignment of error on appeal, the city challenges the trial court's granting of Kuntz's motion for summary judgment, which permitted Kuntz to participate in the city's retirement plan, and to receive sick and vacation benefits for the period during which he was employed on a yearly contractual basis.   This assignment of error is without merit.

In *State ex rel. Hanley v. Roberts* (1985), 17 Ohio St.3d 1, 5, 17 OBR 1, 4, 476 N.E.2d 1019, 1022, the Ohio Supreme Court stated as follows:

"The form of written entry of a decision of an administrative board should be the written minutes of its meeting at which the decision was rendered. * * * The ten-day period for appeal starts to run at the time when the board's decision has been set forth in writing in its minutes.   [Citations omitted.]"

The commission's minutes for February 12, 1987, indicate that the commission approved Kuntz's application to change his personnel record to indicate classified employment status from June 30, 1968 to June 2, 1973.   The city argues that the commission limited its determination of Kuntz's employment status to determine his service credits for purposes of calculating seniority status, and that the commission's ruling did not apply to any other associated employee benefits.   However, the commission's minutes do not support this contention, as the commission did not limit its ruling as to Kuntz's classified status for the period in question in any manner.

The city cites *State ex rel. Gingrich v. Fairfield City School Dist. Bd. of Edn.* (1985), 18 Ohio St.3d 244, 18 OBR 300, 480 N.E.2d 485, for the proposition that eligibility in a retirement system is not determined by civil service status, but rather by specific retirement eligibility status contained in

the appropriate retirement-related chapter of the Cincinnati Municipal Code and the Ohio Revised Code.

The city's reliance upon *Gingrich, supra,* is misplaced. There, the court recognized that:

"A claim by a public employee of entitlement to wages or benefits which are granted by statute or ordinance is actionable in mandamus." *Id.* at 245, 18 OBR at 301, 480 N.E.2d at 486. (Citations omitted.)

The only other issue before the court was what statute of limitations was applicable to the appellant's claim for back compensation for substitute-teaching credits. The court determined that the six-year statute of limitations in R.C. 2305.07 on actions upon a liability created by statute governed the appellant's claims.

The city further contends that it is the board of trustees of the city's retirement system, and not the civil service commission, that determines an employee's eligibility for retirement service credit. Cincinnati Municipal Code Section 203–1–E, effective August 4, 1979, and prior to the 1988 amendment, provided:

" 'Employee' shall mean any officer, agent, servant or employee of the city, not elected, but shall not include officers and employees who receive no salary or nominal salary, except that a student whose employment will not exceed fifteen hundred hours in any calendar year or any new employee not a member at the time of employment, whose employment will not exceed twenty hours per week, or a temporary or emergency employee whose employment will not exceed three calendar months, may be exempt from compulsory membership by filing a written application for exemption from the Public Employees Retirement System within one month after being employed. Such application shall serve to exempt such persons from compulsory membership in the city of Cincinnati retirement system.

"In all cases of doubt, the board shall decide who is an employee within the meaning of the ordinance sections governing the retirement system, and may permit any person who was an employee at the time of becoming a member, to continue as an employee as long as the person continues as a member in receipt of a regular salary from the city for service."

R.C. 145.03 reads in pertinent part:

"A public employee, as defined in division (A) of section 145.01 of the Revised Code, who is employed by a private temporary help service and performs services under the direction of an employer, as defined in division (D) of section 145.01 of the Revised Code, or who is employed on a contractual basis by such an employer, or who is employed under a personal service

contract, does not become a member of the Public Employees Retirement System."

The city's 1988 amendment to Cincinnati Municipal Code Section 203–1–E was as an attempt to align that ordinance with the above-quoted provision of R.C. 145.03. This amendment, effective approximately twenty months after the commission declared Kuntz's employment as classified service for the period in question, does not support the city's position because the commission specifically found that Kuntz was not an independent contractor during the period of June 30, 1968 to June 2, 1973. The city did not appeal this determination by the commission. Accordingly, we hold that the trial court did not err when it determined that Kuntz was eligible to participate in the city's retirement system and to receive vacation credits and sick leave. We, therefore, overrule the city's assignment of error.

### Appeal Number C–910242

■ Kuntz's assignments of error concern his request for attorney fees. In his first assignment of error, Kuntz argues that the trial court erred by denying attorney fees in a taxpayer action after it granted his motion for summary judgment. We do not agree.

R.C. 733.59 provides:

"If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. Any taxpayer of any municipal corporation in which there is no village solicitor or city director of law may bring such suit on behalf of the municipal corporation. No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding."

R.C. 733.61 reads:

"If the court hearing a case under section 733.59 of the Revised Code is satisfied that the taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands. In such case the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney."

In *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, the Ohio Supreme Court held in the third paragraph of the syllabus:

"Where the statutory requirements necessary to maintain a taxpayer's action, pursuant to R.C. 733.59, are met or waived, and the action has been

brought on behalf of the public and resulted in a public benefit, the equity of the case demands that the trial court exercise its discretion in considering the allowance of attorney fees to the successful taxpayers."

In *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 558 N.E.2d 49, several police officers filed a mandamus action against the city which sought an order directing the city to include prior service with other state political subdivisions for purposes of computing their supplemental vacation benefits. The court in that case determined that the officers were entitled to prevail on their action for the writ. However, that court denied the officers' request for attorney fees, stating at 20, 558 N.E.2d at 53:

"This cause, however, is not a 'taxpayer action' as we described it in [*State ex rel. White v. Cleveland*]. *White* establishes that to maintain such an action under R.C. 733.59, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive or advantage. Appellants' action to compel fringe benefits for their own benefit does not represent such an aim. Nor is appellants' right to vacation pay a 'public' right. Thus, appellants are not eligible for the attorney fees that R.C. 733.61 makes available at the court's discretion in suits brought pursuant to R.C. 733.59."

From our review of the record, we conclude, as did the Ohio Supreme Court in *Caspar*, that Kuntz's action to enforce his benefits did not represent a public benefit. Accordingly, we hold that the trial court did not abuse its discretion by denying his request for attorney fees under R.C. 733.61. Kuntz's first assignment of error is overruled.

In his second assignment of error, Kuntz maintains that the trial court erred by failing to award attorney fees pursuant to Section 1988, Title 42, U.S.Code. This assignment of error is well taken.

Kuntz alleged in his amended complaint that the city's refusal to permit him to participate in employment benefits constituted a violation of his Fourteenth Amendment rights; that city Ordinance 406–1988, as applied to Kuntz, denied him due process of law and deprived him of property without just compensation; and that the city acted under color of state law.

The trial court ruled that it had not granted summary judgment to Kuntz on his Section 1983, Title 42, U.S.Code claims and that, therefore, Kuntz was not entitled to an award of reasonable attorney fees pursuant to Section 1988, Title 42, U.S.Code.

Section 1983, Title 42, U.S.Code reads in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory or the district of Columbia subjects, or causes to be subjected, any citizen of the United States * * * to the

deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1988, Title 42, U.S.Code provides in pertinent part:

"[I]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

In *Doe v. Cuddy* (1985), 21 Ohio App.3d 270, 21 OBR 341, 487 N.E.2d 914, this court addressed the question of whether the prevailing party whose claims were resolved entirely under state law was entitled to an award of fees based upon the application of Section 1988, Title 42, U.S.Code, which refers only to the enforcement of federally created rights. In *Doe,* the plaintiffs prevailed on the merits of their state-law claims that the denial of general welfare benefits to group home residents under Ohio Adm.Code 5101:1–5–04 was contrary to R.C. 5113.01, which established basic eligibility standards for general relief. The plaintiffs had initially sought relief in federal district court on constitutional claims predicated upon the denial of the general benefits. The federal judge to whom the case was assigned abstained from ruling on the plaintiffs' constitutional claims and ordered those proceedings stayed pending the resolution of the state-law claims in state court under the authority of the abstention doctrine of *RR. Comm. of Texas v. Pullman Co.* (1941), 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

▮ After prevailing on their state-law claims in the state court, the plaintiffs in *Doe* requested attorney fees under the authority of Section 1988, Title 42, U.S.Code, which the trial court granted. In affirming the award of attorney fees in *Doe,* this court adopted the analysis contained in *Seals v. Quarterly Cty. Court* (C.A.6, 1977), 562 F.2d 390, in which the Sixth Circuit Court of Appeals held that a party that pursued a federal constitutional claim and a state-law claim, but prevailed exclusively on the state-law claim, could be awarded attorney fees under Section 1988, Title 42, U.S.Code if the state-law claim shared " 'a common nucleus of operative fact' with the separate federal claim brought pursuant to Section 1983, Title 42, U.S.Code * * * and if the federal claim was, under the circumstances, a substantial one." *Doe v. Cuddy, supra,* 21 Ohio App.3d at 273, 21 OBR at 344, 487 N.E.2d at 917; see, also, *Fenton v. Query* (1992), 78 Ohio App.3d 731, 605 N.E.2d 1303.

In regard to the substantiality of a claim, this court observed that:

"A claim may be held plainly insubstantial under the test only if it is obviously without merit or if its unsoundness so clearly results from previous

judicial decisions that it must be said that the subject is foreclosed and that there is no room for the inference that the question sought to be raised can be a matter of legitimate controversy. [Citations omitted.]" *Id.*, 21 Ohio App.3d at 273, 21 OBR at 344, 487 N.E.2d at 917.

In *Hensley v. Eckerhart* (1983), 461 U.S. 424, 433–434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40, 50–51, a case involving federal constitutional claims, the United States Supreme Court explained:

"A plaintiff must be a 'prevailing party' to recover an attorney's fee under [Section 1988, Title 42, U.S.Code]. The standard for making this threshold determination has been framed in various ways. A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' [Citation omitted.] This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

"The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' [Citation omitted.] Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

" * * *

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' [Footnote omitted.] This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level

of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

In *Texas State Teachers Assn. v. Garland Indep. School Dist.* (1989), 489 U.S. 782, 790–791, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866, 876, the United States Supreme Court further explained:

"Although respondents are correct in pointing out that [*Hensley v. Eckerhart*] did not adopt one particular standard for determining prevailing party status, *Hensley* does indicate that the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.

"Our decision in *Hensley* is consistent with the congressional intent in this regard. Congress clearly contemplated that interim fee awards would be available 'where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues.' [Citations omitted.] In discussing the availability of fees *pendente lite* under [Section 1988, Title 42, U.S.Code], we have indicated that such awards are proper where a party 'has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal.' *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 [674] (1980). The incongruence of the 'central issue' test in light of the clear congressional intent that interim fee awards be available to partially prevailing civil rights plaintiffs is readily apparent. In this case, our summary affirmance of the Court of Appeal's judgment for respondents on the union access issues and for petitioners on the teacher-to-teacher communication issues effectively ended the litigation. Because the Court of Appeals found that petitioners had not succeeded on what it viewed as the central issue in this suit, no fees were awarded. Yet, if petitioners' victory on the teacher-to-teacher communication issue had been only an interim one, with other issues remanded for further proceedings in the district court, petitioners would have been entitled to some fee award for their successful claims under [Section 1988, Title 42, U.S.Code]. Congress cannot have meant 'prevailing party' status to depend entirely on the timing of a request for fees: A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation."

From our review of the record we believe that there is a nexus between Kuntz's state-law claims, upon which he prevailed, and his constitutional claims. Furthermore, we hold such claims to be substantial. Since Kuntz prevailed on his state-law claims, we hold that the trial court erred by failing to consider Kuntz's claim for an award of attorney fees under Section 1988, Title 42, U.S.Code. Accordingly, the second assignment of error is sustained.

To summarize, we affirm the trial court's judgment as it pertains to Kuntz's entitlement to retirement benefits, sick leave, and vacation credit. We further affirm the trial court's ruling that Kuntz was not entitled to attorney fees under R.C. 733.61. However, we reverse the judgment of the trial court as it pertains to Kuntz's claim for attorney fees under Section 1988, Title 42, U.S.Code. We, therefore, remand this cause to the Hamilton County Court of Common Pleas for further proceedings consistent with this opinion and law.

*Judgment reversed in part,*
*affirmed in part*
*and cause remanded.*

SHANNON, P.J., and KLUSMEIER, J., concur.