The STATE ex rel. RICHARD

v.

CUYAHOGA COUNTY [Board of] COMMISSIONERS et al.

[Cite as *State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs.* (1995), 100 Ohio App.3d 592.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66528.

Decided Feb. 28, 1995.

*Donald L. Richard, Sr., pro se.*

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Bryan L. Adamson,* Assistant Prosecuting Attorney, for respondents.

---

JAMES M. PORTER, Judge.

Respondents Cuyahoga County Commissioners moved for attorney fees, costs and sanctions pursuant to R.C. 2323.51 against relator *pro se,* Donald L. Richard, Sr., for filing a frivolous mandamus action. We deny their motion for the reasons hereinafter disclosed. However, we recognize that the relator has consistently abused the process of this court by filing sixty-three original actions over a three-

year period. Accordingly, we exercise the inherent authority of this court to deny relator *in forma pauperis* status with respect to the future filing of original actions in this court. The Clerk of Court is instructed not to accept for filing any *pro se* original actions from Donald L. Richard, Sr., # A197–168, Lorain Correctional Institute, 2075 S. Avon Belden Road, Grafton, Ohio 44044, unless accompanied by the $100 cost deposit required by Loc.App.R. 8(A).

Relator is serving a fifteen-year-to-life term resulting from his conviction of murder in C.P. case No. CR–215283. This court affirmed that conviction in *State v. Richard* (Oct. 31, 1988), Cuyahoga App. No. 54228, unreported, 1988 WL 112872. At the same time, relator is serving twelve to fifteen years for felonious assault with a gun resulting from his conviction in C.P. case No. CR–214217, which this court affirmed in *State v. Richard* (June 27, 1988), Cuyahoga App. No. 54040, unreported, 1988 WL 86734.

The state claims that since relator's conviction he has initiated over two hundred fifty actions or appeals in various Ohio courts, naming nearly fifty individuals or entities as defendants/respondents, and many on more than one occasion. Each time relator institutes an action, the state is obliged to respond. Relator does not dispute the extent of his litigiousness, but argues that his multiple filings were not frivolous or malicious.

In his most recent activity, relator filed a mandamus action against Acme Detective Agency, Inc., the Cuyahoga County Commissioners, and his court-appointed attorneys, Stephen McGowan and Thomas Moroney. The commissioners moved to dismiss the petition as to them for failure to state a claim. Within the same motion, the commissioners requested attorney fees as sanctions against relator for filing a frivolous civil action under R.C. 2323.51, and requested an order enjoining the acceptance of further filings by relator unless first reviewed by a licensed attorney or approved by a judge. On January 13, 1994, this court granted in part the motion to dismiss. We dismissed relator's petition as to the commissioners, but reserved ruling on the commissioners' request for sanctions pending further briefing.

On February 24, 1994, relator filed a "Motion to Dismiss Without Prejudice Pursuant to Civ.R. 41(A)," which this court construed as a voluntary notice of dismissal.

On March 1, 1994, pursuant to the briefing schedule issued January 13, the commissioners filed a motion for costs, attorney fees, and sanctions with supporting documentation. The commissioners sought fees and costs pursuant to R.C. 2323.51 and requested this court to "enjoin any further *pro se* filings by Relator *in forma pauperis* in the Cuyahoga County Court of Common Pleas and Court of Appeals, unless:

"1. The filing contains the signature of an officer of the court, which signature is in compliance with Civil Rule 11, or;

"2. The filing is first submitted to a judge of the Court of Common Pleas or Court of Appeals, who determines that the filing is not duplicative of the same or similar issues previously raised."

The remaining respondents filed a Civ.R. 12(B)(6) motion to dismiss on April 22, 1994.

On June 6, 1994, this court denied as moot the commissioners' motion for sanctions and the other respondents' motion to dismiss because it was divested of jurisdiction on February 24, 1994, when relator voluntarily dismissed this case. The commissioners moved for reconsideration and, upon review, we granted the motion for reconsideration and reinstated the motion for costs, attorney fees and sanctions filed by the commissioners. We also ordered supplemental briefing on the issue of whether R.C. 2323.51 is applicable to mandamus actions, which are governed by a different set of statutes in R.C. Chapter 2731. The commissioners and relator filed supplemental briefs as ordered, but relator continued to press the issue of whether this court has jurisdiction in light of his voluntary dismissal in February 1994.

Unlike other issues in a case, the issue of whether a court has jurisdiction over a subject matter is never waived and may be raised at any time during litigation. Civ.R. 12(H)(3); *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 2 O.O.3d 408, 358 N.E.2d 536, overruled on other grounds, *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650; *State ex rel. Lawrence Dev. Co. v. Weir* (1983), 11 Ohio App.3d 96, 11 OBR 148, 463 N.E.2d 398. Relator's challenge to our jurisdiction has prompted us to reexamine this issue.

The Ohio Rules of Civil Procedure, as supplemented by our local rules, are applicable to mandamus actions. Loc.App.R. 1(B) and 8(B)(1); see *State ex rel. Millington v. Weir* (1978), 60 Ohio App.2d 348, 14 O.O.3d 310, 397 N.E.2d 770; see, also, *State ex rel. Russell v. Shaker Hts. Mun. Court* (1993), 87 Ohio App.3d 511, 515, 622 N.E.2d 697, 700 (prohibition is a civil action subject to Rules of Civil Procedure). Civ.R. 41(A)(1), which governs the voluntary dismissal of an action by the plaintiff, provides in relevant part that "an action may be dismissed by the plaintiff without order of court * * * by filing a notice of dismissal at any time before the commencement of trial * * *. Unless otherwise stated in the notice * * *, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court, an action based on or including the same claim."

The right of a plaintiff to dismiss once, regardless of motive, is absolute, even though that right may be subject to abuse. *Sturm v. Sturm* (1992), 63 Ohio

St.3d 671, 675, 590 N.E.2d 1214, 1217; *Goldstein v. Goldstein* (1988), 50 Ohio App.3d 4, 5–6, 552 N.E.2d 228, 230. The Supreme Court of Ohio has advised that "[a]n obvious purpose for the rule is to encourage the plaintiff to bring a rapid and complete conclusion to an action, which, for whatever the reason, cannot or should not be tried. The rule does not require the trial court to investigate the plaintiff's motivation for dismissing the action." *Sturm*, 63 Ohio St.3d at 674, 590 N.E.2d at 1217.

A voluntary dismissal is effective upon filing, and no further entry by the court is necessary to trigger the end of the litigation. Civ.R. 41(A)(1); *Goldstein*, 50 Ohio App.3d at 7, 552 N.E.2d at 231; *Clay Hyder Trucking Lines, Inc. v. Riley* (1984), 16 Ohio App.3d 224, 16 OBR 240, 475 N.E.2d 183; *Frysinger v. Leech* (1983), 10 Ohio App.3d 150, 10 OBR 202, 460 N.E.2d 1161. The filing of a voluntary dismissal immediately divests the trial court of jurisdiction to go forward in the matter. *Sturm*, 63 Ohio St.3d at 676, 590 N.E.2d at 1217–1218; *State ex rel. Hunt v. Thompson* (1992), 63 Ohio St.3d 182, 586 N.E.2d 107; *Goldstein*, 50 Ohio App.3d at 5–7, 552 N.E.2d at 229–232.

Respondents argued earlier in their motion for reconsideration that relator's voluntary dismissal would not divest this court of jurisdiction to hear an R.C. 2323.51 motion for sanctions filed prior to the dismissal. It is true that a sanctions proceeding for filing a frivolous lawsuit may survive independently of a first voluntary dismissal, at least pursuant to Civ.R. 11. See, *e.g.*, *Cooter & Gell v. Hartmarx Corp.* (1990), 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359. Even under R.C. 2323.51 there is authority which holds that a voluntary dismissal does not deprive the court of jurisdiction to award the statutory sanctions. See *Schwartz v. Gen. Acc. Ins. of Am.* (1993), 91 Ohio App.3d 603, 632 N.E.2d 1379; *Grossman v. Mathless & Mathless, C.P.A.* (1993), 85 Ohio App.3d 525, 620 N.E.2d 160. Two unreported decisions from this court have reached the same conclusion: *Keeler v. Sohio Procare* (Nov. 23, 1992), Cuyahoga App. No. 61346, unreported, 1992 WL 333152; *Gammons v. O'Neill* (Aug. 29, 1994), Cuyahoga App. No. 66232, unreported, 1994 WL 449379. In *Keeler*, however, which *Gammons* references in addition to *Grossman*, the court relied partially on the inherent authority of this court to impose sanctions, citing *Slabinski v. Servisteel Holding Co.* (1986), 33 Ohio App.3d 345, 515 N.E.2d 1021. For the reasons stated below, we find the use of our inherent authority preferred under the circumstances herein and we rely upon it now to withdraw *in forma pauperis* status from relator.

Frivolous conduct has no place in our judicial system, and relator's history of activity portrays a repetitious and perverse course of such conduct. An award of attorney fees and costs against relator, an incarcerated individual, whether pursuant to R.C. 2323.51 or Civ.R. 11, may be an exercise in futility and may not,

in fact, deter his long-standing pattern of aggressive filings. Moreover, the use of R.C. 2323.51 or Civ.R. 11 would necessitate an additional fact-finding hearing, further diverting the limited resources of the court, the state and the county for each instance of alleged abuse.

Nevertheless, the inherent authority of this court exists to provide some meaningful relief against an onslaught of frivolous filings. The Supreme Court of Ohio, in explaining the difference between the jurisdiction of a court and the inherent authority of a court, stated as follows:

"The difference between the jurisdiction of courts and their inherent powers is too important to be overlooked. In constitutional governments their jurisdiction is conferred by the provisions of the constitutions and of statutes enacted in the exercise of legislative authority. That, however, is not true with respect to such powers as are necessary to the orderly and efficient exercise of jurisdiction. Such powers, from both their nature and their ancient exercise, must be regarded as inherent. They do not depend upon express constitutional grant, nor in any sense upon the legislative will. The power to maintain order, to secure the attendance of witnesses to the end that the rights of parties may be ascertained, and to enforce process to the end that effect may be given to judgments, must inhere in every court or the purpose of its creation fails. Without such power no other could be exercised." *Hale v. State* (1896), 55 Ohio St. 210, 213, 45 N.E. 199, 200; see *Slabinski v. Servisteel Holding Co.*, *supra*, 33 Ohio App.3d 345, 515 N.E.2d 1021. Thus, as a necessary function of existence, courts retain the power inherently to control their efficient and prudent operation.

Several courts in recent years, whether by statute, rule, or through their inherent authority, have levied sanctions or fashioned remedies to preclude the filing of frivolous and repetitious proceedings.[1] In *Kondrat v. Byron* (1989), 63 Ohio App.3d 495, 579 N.E.2d 287, the court affirmed the issuance of a permanent injunction that enjoined Kondrat from filing future cases *pro se* absent certain stringent conditions. Over an eleven-year period, Kondrat filed over eighty-five actions in various courts, all of which were unsuccessful. The appellate court stated:

"Further, in *Bd. of Cty. Commrs. v. Barday* (1979), 197 Colo. 519, at 522, 594 P.2d 1057, at 1059, it was stated:

" 'We recognize that the Colorado Constitution guarantees to every person the right of access to courts of justice in this state. Colo. Const. Art. II, Sec. 6.

---

1. In the case of a frivolous appeal, pursuant to App.R. 23, an appellate court "may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." The appellate rules do not similarly authorize sanctions for frivolous original actions. This omission should be corrected.

However, the right of access to courts does not include the right to impede the normal functioning of judicial processes. Nor does it include the right to abuse judicial processes in order to harass others. Where we find, as here, that a 'pro se' litigant's efforts to obtain relief in our courts not only hamper his own cause, but deprive other persons of precious judicial resources, we must deny his right of self-representation as a plaintiff. We note that only his right of self-representation is being denied, not his right of access to the courts; Mr. Barday is still free to proceed through an attorney of his choice, and he is still free to appear 'pro se' in his own 'defense.' Thus, this injunction works no infringement on respondent's constitutional rights.' " *Kondrat, supra,* 63 Ohio App.3d at 498, 579 N.E.2d at 288–289.

This same position has been adopted in Ohio. *Kondrat,* 63 Ohio App.3d at 498, 579 N.E.2d at 288–289.

In *Karmasu v. S. Ohio Corr. Facility* (1993), 63 Ohio Misc.2d 377, 629 N.E.2d 1132, the Court of Claims of Ohio denied an inmate *in forma pauperis* status after the inmate had filed thirty-seven cases in a few years' time. The court stated that "[a]lthough the court does not wish to deny any individual the right to his day in court, the abusive procedure of filing frivolous lawsuits requires the court to overrule plaintiff's request to proceed *in forma pauperis* in his recent filing." *Karmasu,* 63 Ohio Misc.2d at 378, 629 N.E.2d at 1133. The court ordered plaintiff to pay the filing fee or have his case dismissed.

In *Besser v. Dexter* (1993), 87 Ohio App.3d 826, 623 N.E.2d 223, the court upheld the decision of the trial court to place a lien on the plaintiff's prison account. The court stated:

"Appellant cites no authority prohibiting a lien on his prison account. We note that Section 1988, Title 42, U.S.Code permits awards of court costs and attorney fees in civil rights actions brought pursuant to Section 1983, Title 42, U.S.Code. The assessment of court costs pursuant to Section 1988, Title 42, U.S.Code falls within the sound discretion of the trial court. See *Fenton v. Query* (1992), 78 Ohio App.3d 731, 605 N.E.2d 1303; *Gibney v. Toledo Bd. of Edn.* (1991), 73 Ohio App.3d 99, 596 N.E.2d 591. We find the trial court did not abuse its discretion when placing a lien on appellant's prison account and requiring that half of all incoming monies be used to pay the nominal attorney fees and court costs in the case *sub judice.* See *Weaver v. Toombs* (C.A.6, 1991), 948 F.2d 1004; *Sales v. Marshall* (C.A.6, 1989), 873 F.2d 115. We note the court assessed appellant only $5 for attorney fees, and ordered appellant to pay only one-half of the total costs." *Besser,* 87 Ohio App.3d at 830–831, 623 N.E.2d at 226.

The United States Supreme Court on two separate occasions denied *in forma pauperis* status prospectively to two *pro se* petitioners seeking extraordinary writs. In *In re McDonald* (1989), 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158,

where the petitioner had made seventy-three filings, which included twenty-two petitions for extraordinary writs, over thirteen years, the court stated:

"[P]aupers filing pro se petitions are not subject to the financial considerations—filing fees and attorney's fees—that deter other litigants from filing frivolous petitions. Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual processing of petitioner's frivolous requests for extraordinary writs does not promote that end. Although we have not done so previously, lower courts have issued orders intended to curb serious abuses by persons proceeding in forma pauperis. Our order here prevents petitioner from proceeding in forma pauperis when seeking extraordinary writs from the Court. * * * We have emphasized that extraordinary writs are, not surprisingly, 'drastic and extraordinary remedies,' to be 'reserved for really extraordinary causes,' in which 'appeal is clearly an inadequate remedy.'" *McDonald,* 489 U.S. at 184–185, 109 S.Ct. at 996, 103 L.Ed.2d at 164–165.

Similarly, in *In re Sindram* (1991), 498 U.S. 177, 111 S.Ct. 596, 112 L.Ed.2d 599, wherein the petitioner filed forty-two separate petitions and motions in three years, the court further explained:

"In *McDonald,* we denied *in forma pauperis* status to a petitioner who filed a similarly nugatory petition for extraordinary writ. As we explained, the Court waives filing fees and costs for indigent individuals in order to promote the interest of justice. The goal of fairly dispensing justice, however, is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests. *Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources because they are not subject to the financial considerations—filing fees and attorney's fees—that deter other litigants from filing frivolous petitions. *Id.,* at 184 [109 S.Ct., at 996, 103 L.Ed.2d at 164–165]. The risks of abuse are particularly acute with respect to applications for extraordinary relief, since such petitions are not subject to any time limitations and, theoretically, could be filed at any time without limitation. In order to prevent frivolous petitions for extraordinary relief from unsettling the fair administration of justice, the Court has a duty to deny *in forma pauperis* status to those individuals who have abused the system. Under the circumstances of this case, we find it appropriate to deny *in forma pauperis* status to petitioner in this and all future petitions for extraordinary relief." *Sindram,* 498 U.S. at 179–180, 111 S.Ct. at 597–598, 112 L.Ed.2d at 604–605.

We find the reasoning of these courts, particularly the United States Supreme Court, extremely pertinent and persuasive. The remedies available through the

writ practice of a court are extraordinary since original action remedies are available only when the usual forms of procedure are incapable of affording relief. *State ex rel. Woodbury v. Spitler* (1973), 34 Ohio St.2d 134, 137, 63 O.O.2d 229, 231, 296 N.E.2d 526, 528. From 1991 through 1993 alone, however, relator herein, Donald L. Richard, Sr., has sought this extraordinary relief in *sixty-three* separate filings! In two recent filings, one of which occurred in January 1994, this court *sua sponte* deemed relator's petitions both frivolous and harassing: In *State ex rel. Richard v. Fuerst* (Jan. 31, 1994), Cuyahoga App. No. 66797, unreported, this court *sua sponte* dismissed relator's petition because the issue raised was identical to the issue raised and previously decided in *State ex rel. Richard v. Fuerst* (Dec. 20, 1993), Cuyahoga App. No. 66181, unreported, and in *State ex rel. Richard v. Greene* (Jan. 11, 1994), Cuyahoga App. No. 66489, unreported, this court found that relator had disregarded clear precedent regarding the issue he raised and also found that relator's action, whether meritless or not, became moot nearly one year before relator filed his petition. See, also, *State ex rel. Richard v. Griffin* (Dec. 3, 1993), Cuyahoga App. No. 66069, unreported, 1993 WL 515637 (repetitive issue disregarding precedent and mootness). We note that this court waived the filing fee for Richard in all of his previous actions. We need look no further than our own docket to now conclude that Richard has abused the system and the privilege of proceeding *in forma pauperis* by commencing over sixty original actions in just three years. We therefore find it appropriate to deny Richard *in forma pauperis* status for all future original action petitions.

Section 16, Article I of the Ohio Constitution provides that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." This right of access to the courts does not include the right to abuse the judicial processes and we believe it is within the inherent authority of this court to prevent such abuses and guarantee that justice is administered to all equally. For every fruitless petition filed by Richard, precious judicial resources, in addition to the limited resources of the prosecutor's office, are diverted from other deserving petitions and court work. We have not infringed unconstitutionally on Richard's access to this court by denying him *in forma pauperis* status. Richard is currently incarcerated and thus living at taxpayer expense. He does earn a small monthly income. If Richard has a genuine claim for extraordinary relief which he wishes to present *pro se*, he can save his income to file same, as most other litigants are required to do. The abuse, however, must stop.

Accordingly, the Clerk of Court is instructed to refuse any original action *pro se* petitions received from Donald L. Richard, Sr., # A197–168, Lorain Correc-

tional Institute, 2075 S. Avon Belden Road, Grafton, Ohio 44044, unless accompanied by the $100 cost deposit required by Loc.App.R. 8(A).

*Judgment accordingly.*

Nugent, P.J., and Dyke, J., concur.