OPINION
{¶ 1} Appellant Kelli Beltz nka Vocaire appeals the post-decree decision of the Stark County Court of Common Pleas, Domestic Relations Division. Appellee Charles Beltz II is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were divorced in 1996. One child, Kelsey, was born as issue of the marriage. The divorce decree incorporated a separation agreement under which no child support was to be paid. However, subsequent thereto, the court modified its parental rights and responsibilities orders, making appellee the custodial parent, as well as the obligee for child support purposes.
 {¶ 3} On November 20, 2002, appellant filed the following post-decree motions: a motion to modify child support, a motion to modify allocation of parental rights and responsibilities, and a motion to modify visitation. Said motions were set for a pretrial before a family court magistrate on May 1, 2003. On that date, a further hearing was set on the three motions for September 18, 2003.
 {¶ 4} In the meantime, on January 3, 2003, appellee filed a motion to show cause against appellant, alleging failure to comply with court-ordered child support. On February 19, 2003, both parties appeared with counsel for a pre-trial hearing on the issue of child support contempt. At that time, the trial court set appellee's contempt motion for an evidentiary hearing on May 14, 2003.
 {¶ 5} Two days before the contempt hearing of May 14, 2003, appellant filed a motion to continue said hearing, stating as grounds that she was suffering from pregnancy complications. Appellant attached in support thereof a letter from one of her doctors.
 {¶ 6} At the May 14, 2003 hearing, appellee appeared with counsel. Appellant failed to appear, but her attorney made an oral renewal of her motion to continue. The court, via judgment entry, continued the contempt hearing until July 8, 2003. However, the court also proceeded to address appellant's three post-decree motions, which had recently been set by the magistrate for a hearing to occur in September 2003. The court dismissed appellant's motion to modify allocation of parental rights and responsibilities and her motion to modify child support. Additionally, the court sustained appellant's motion to modify visitation in accordance with a report the court had recently received from psychologist Dr. Tully. Appellant was ordered to pay for the supervised visitation services.
 {¶ 7} On June 13, 2003, appellant filed a notice of appeal. She herein raises the following sole Assignment of Error:
 {¶ 8} "I. The trial court abused its discretion in summarily dismissing the appellant's motions (sic) to modify child support, motion to modify parental rights and responsibilities and ruling upon the motion to modify visitation."
 I. {¶ 9} In her sole Assignment of Error, appellant argues the trial court abused its discretion in dismissing two of her post-decree motions and ruling upon the third at the hearing on contempt. We agree in part. We will analyze each motion separately.
 Appellant's Motion to Modify Child Support {¶ 10} It is undisputed the trial court correctly noted that appellant's motion to modify child support failed to include a financial affidavit. Stark County Local Rule 15.02 reads as follows: "All motions for support and/or legal separation, temporary or modification, must be accompanied by a signed, sworn, current financial statement, a copy of which shall be served on the opposing party. Any motion filed without the required financial statement furnished by the Court is subject to immediate dismissal."
 {¶ 11} Pursuant to the above rule, we are unable to find the trial court abused its discretion in dismissing appellant's motion to modify child support.
 Appellant's Motion to Modify Allocation of Parental Rights and Responsibilities {¶ 12} R.C. 3109.04(E)(1)(a) reads in pertinent part as follows: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. ***."
 {¶ 13} Appellant's affidavit in support of her three-branch motion of November 20, 2002, reads as follows in its entirety:
 {¶ 14} "KELLI M. VOCAIRE, first being duly sworn according to law, deposes and states the following:
 {¶ 15} "1. AFFIANT states that she is the Plaintiff in the within matter.
 {¶ 16} "2. AFFIANT states further that pursuant to the prior Orders of this Court, any and all visitation between the Affiant and the parties' minor child where (sic) suspended.
 {¶ 17} "3. AFFIANT states further that at the time of the journalization of the prior Orders of this Court, the Affiant was incarcerated.
 {¶ 18} "4. AFFIANT states further that she has been released from incarceration and is now available to participate in visitation and possession of the parties' minor child.
 {¶ 19} "5. AFFIANT states further that the Defendant, Charles A. Beltz, II, has refused any and all efforts of the Affiant to initiate telephone contact with the minor child.
 {¶ 20} "6. AFFIANT states further that the Defendant, Charles A. Beltz, II, has also interrupted and interfered with all written correspondences between the Affiant and the minor child.
 {¶ 21} "7. AFFIANT states further that since the prior Orders of this Court, the Defendant Charles A. Beltz, II, and his new spouse have attempted to have the minor child adopted in an action filed with the Court of Common Pleas, Probate Division, Stark County, Ohio.
 {¶ 22} "8. AFFIANT states further that after opposing the adoption attempt of Charles A. Beltz, II and his spouse, the adoption proceedings were voluntarily dismissed.
 {¶ 23} "9. AFFIANT states further that the parties' minor child has regular and consistent contact with the maternal grandmother. Charles A. Beltz, II has threatened to withhold any and all contact between the minor child and the maternal grandmother if there is contact with the minor child and the Affiant.
 {¶ 24} "10. AFFIANT states further that it is in the best interest of the parties' minor child to recommence contact and visitation with the Affiant.
 {¶ 25} "11. AFFIANT states further that she has relocated her residence to the State of Pennsylvania and she has adequate housing and other facilities to participate in visitation and possession of the parties' minor child.
 {¶ 26} "12. AFFIANT states further that since the prior Orders of this Court she has undergone various counseling and other treatment in response to the prior Orders of this Court regarding counseling.
 {¶ 27} "13. AFFIANT states further that there has been a significant change in circumstances since the prior Orders of this Court which justify and necessitate the reunionification (sic) and recommencement of contact between the Affiant and the parties' minor child.
 {¶ 28} "AFFIANT FURTHER SAYETH NAUGHT."
 {¶ 29} A trial court is inherently vested with discretion to control judicial proceedings. In re: Guardianship of Maurer (1995),108 Ohio App.3d 354; State ex rel. Richard v. Cuyahoga CountyCommissioners (1995), 100 Ohio App.3d 592, 597. We find appellant's affidavit fails to aver the occurrence of a change in the circumstances of the child or the child's residential parent pursuant to R.C.3109.04(E)(1)(a). We therefore find no error by the trial court prejudicial to appellant (see App.R. 12(D)), and we are otherwise unable to conclude the trial court abused its discretion in dismissing appellant's motion to modify parental rights and responsibilities. Cf.Sullivan v. Sullivan (Dec. 8, 1999), Hamilton App. No. C-990297.
 Appellant's Motion to Modify Visitation {¶ 30} R.C. 3109.051(D) reads in pertinent part as follows:
 {¶ 31} "In determining whether to grant parenting time to a parent pursuant to this section ***, the court shall consider all of the following factors:
 {¶ 32} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 {¶ 33} "(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 {¶ 34} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 {¶ 35} "(4) The age of the child;
 {¶ 36} "(5) The child's adjustment to home, school, and community;
 {¶ 37} "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
 {¶ 38} "(7) The health and safety of the child;
 {¶ 39} "(8) The amount of time that will be available for the child to spend with siblings;
 {¶ 40} "(9) The mental and physical health of all parties;
 {¶ 41} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 {¶ 42} "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 43} "(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 44} "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 45} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 {¶ 46} "(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
 {¶ 47} "(16) Any other factor in the best interest of the child."
 {¶ 48} At a minimum, due process of law requires notice and opportunity for a hearing, that is, an opportunity to be heard. Himes v.Himes, Tuscarawas App. No. 2002AP100084, 2003-Ohio-2935, citing Mathewsv. Eldridge (1976), 424 U.S. 319. Natural parents have a constitutionally protected liberty interest in the care and custody of their children. SeeSantosky v. Kramer (1982), 445 U.S. 745, 753. Under the facts and circumstances of this case, wherein the trial court had already set the issue of visitation for an additional hearing at a later time, we hold the immediate and unscheduled ruling on the visitation motion at the contempt hearing, in the absence of appellant, was a violation of due process and an abuse of discretion.
 {¶ 49} Accordingly, appellant's sole Assignment of Error is overruled in part and sustained in part.
 {¶ 50} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is hereby affirmed in part and reversed in part. The dismissal of appellant's visitation motion only is hereby vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.